## PRESTON v. McNEIL LUMBER CO.

(Circuit Court, M. D. Pennsylvania. May 12, 1906.)

### No. 40.

CONTRACTS—SALE OF STANDING TIMBER—EVIDENCE TO CHANGE BOUNDARY.
  Evidence considered, and *held* insufficient to sustain the burden of proof resting upon defendants to establish their claim that the boundary of a tract of land on which they bought the standing timber from plaintiff, as described in the contract of sale, was different from the boundary as shown on the ground by plaintiff and which by the terms of the contract he guarantied to be the true boundary.

At Law. On trial by the court without a jury.
See 143 Fed. 555.

D. W. Baldwin and E. H. Owlett, for plaintiff.
H. A. Knapp and Moses Shire, for defendant.

ARCHBALD, District Judge. No particular point of law is involved in this case. It is purely a question of fact. Notwithstanding which the parties have agreed to submit the case to the court without a jury, and the opinion to be filed will therefore necessarily consist merely in a discussion of the evidence and an announcement of the conclusions reached.

By a written agreement, made December 9, 1903, a copy of which is attached to the statement, the plaintiff, James Preston, sold to the defendants, Peter and Catherine McNeil, doing business as the McNeil Lumber Company, all the timber standing and down upon two certain tracts of land in Farmington township, Tioga county, Pa., for the price of $9,300 which the defendants undertook to pay in certain installments, all of which have been met, except the final one of $2,800, which was to become due and payable September 1, 1905, and was to carry interest at 6 per cent. from September 1st of the preceding year; and it is to recover this that the present suit is brought. The defendants contend that they were not allowed to take the whole of the timber contracted for, and they therefore resist the action, although the value of that which they claim to have been withheld would not in any event amount in value to more than about $1,800.

The principal controversy is with regard to the second tract, identified by the agreement as part of the premises purchased of Robert Casebeer, bounded and described as follows:

"North by the cleared fields of the first party hereto [Preston]; west by the cleared fields of the same; south by the cleared fields belonging to David Kemp; and east by the cleared fields of the first party, and also by a straight line running from the corner of the first party's cleared fields through the woods to lands of David Kemp, along the line of old blazed trees and stumps."

It is this last line that is in dispute, the defendants claiming that it is some four or five rods further over to the east than where the plaintiff says it is, taking in from six to eight acres more of land, upon which there is about 165,000 feet of timber, mainly hemlock. Reserved also to the plaintiff by the agreement from the other tract, was a strip on the west side, which is described as having once been cut over and subsequently grown up with a small second growth; with regard to which it was provided, that if the defendants, after looking it over, considered that there was any timber on it which they cared for, the plaintiff should give them the same amount and kinds from his other lands; which it is charged that, upon the exercise of this option by the defendants, he has refused to do. These are the two points at issue between the parties.

The land was not inspected nor the sale effected by the defendants personally, but by and upon the report of S. S. Philips and C. T. Dennis, who were in their employ, who went upon the ground with the plaintiff, and were shown where the line that is now in dispute was supposed to be; and it is upon their testimony as to where this was, that the defendants now rely. The plaintiff moreover guarantied in the agreement, that the lines were as they had been so shown to these parties, and to this, therefore, he is now of course to be held. The reference to this in the agreement, however, was not made, as it might seem, at the instance of the defendants, but according to Mr. Smith who drew it, and whose statement, corroborated as it is by others who were present, I accept, was inserted by him upon his own motion, as a matter of precaution, growing out of his experience of its effectiveness in another case. While, then, full legal force is to be given to the provision, it loses not a little of its significance, as a matter of fact, by reason of this. It is still undoubtedly to be taken as determining where the disputed line is, which the defendants are entitled to have declared and established as it was so pointed out by the plaintiff; but that is all.

Taking the agreement as it reads, the tract in controversy is bounded, as we have seen, upon its easterly side, by "a straight line running from the corner of the first party's [Preston's] cleared fields, through the woods, to lands of David Kemp, along the line of old blazed trees and stumps." The line which naturally fulfills this description is the one contended for by the plaintiff, and it must therefore prevail over that claimed by the defendants, unless, having regard to the weight of the evidence and the guaranty referred to, it clearly cannot. It is the only line which starts from the corner of the plaintiff's cleared field—a sufficiently well defined and not easily mistakable monument —or comes anywhere near to doing so; and it is also the exact rectilinear extension of the east side of the Casebeer lot, of which, according to the recitals in the agreement, the tract sold was a part.

While on the other hand the location claimed by Philips and Dennis not only breaks the continuity of this line making a decided jog or angle in it, where it is described as straight; but it tacks on, as an appendage to what is declared to be taken from the Casebeer lot, a part of the Hoyt lot, derived from an entirely separate and independent source. As then the line which is so contended for can only be followed by doing violence in this way to the description of it found in the agreement, there is necessarily a decided burden upon the party who seeks to make this out, and the question is whether it has been successfully met, which depends on the force to be given to the testimony of Philips and Dennis, upon which as already stated the defendants are compelled to rely.

According to the statement of these parties, when the plaintiff was showing them his lands, he took them up through the cleared fields to the woods, and there pointed out a line of blazed trees, which ran through to the Kemp line. On the first of these, located a little way in from the edge of the timber, Dennis cut a V-shaped mark with his knife, in the surveyor's blaze, in order to be able to recognize it again; and upon this controversy having arisen, going to the place by himself, separate and apart from Philips, he claims to have found and identified it. This tree he fixes, where Philips also maintains that the line is; the two thus, independently of each other, having apparently arrived at one and the same result. It must be confessed that on its face this is strong evidence in favor of the defendants, and is not lightly to be set aside. Unfortunately however for the defendants, there is other evidence which calls it seriously in question; and while I am satisfied that these parties are entirely honest in their belief, I am convinced that they are in fact mistaken. Not only is Philips shown by several witnesses to have declared, before any controversy had arisen, that the line is where it is now contended for by the plaintiff, but the one which he and Dennis claimed to identify fails to fulfill in an essential particular, not only the description found in the agreement, but that which they themselves give of the one to which they were taken; and that is, that there were blazed trees and stumps along it having regular surveyors' marks upon them, indicative of an established lot or land line. There are trees and stumps of this kind upon the line as the plaintiff claims it, running practically all the way through to the Kemp property; and identified as this is, by actual survey, with the easterly line of the Casebeer tract, these trees are thus found where they ought and would be expected to be; while on the other hand, and in marked contrast therewith, there are no such blazed trees, nor anything to suggest a land line, where it is located by Philips and Dennis. It is true that there is an opening into the woods and an old roadway at that point, leading into a sugar bush, and there may be trees along it which show blazings; but nothing by way of surveyors' marks, which are quite different. The identification by Dennis which under the circumstances is the one of chief importance, rests therefore entirely on the mark which he cut with his knife and claims to have found again, although not, as it would appear without some little search and difficulty. And however satisfactory and convincing

to his own mind this identification may be, its value here is made to depend upon the one means which he adopted, discarding others equally significant none of which he seems to have been guided by. It is true that he says there were blazed trees along there; but he only followed the supposed line for a hundred feet or so, which amounted to nothing. It is to be borne in mind, also, that the dispute had arisen when he went there, and that he knew that Philips claimed the line to be beyond where they had cut to; and also that with the timber down and the slashings extending up to the edge of the Casebeer lot, it presented quite a different aspect from the time when he first went through there. All these are considerations which rob his alleged identification of much of its significance, and make way for the other evidence which fixes the location elsewhere. With regard to Philips, as already stated, his testimony is seriously called in question, by several witnesses who swear that he pointed out the line to them, or in their hearing, as along where it is now claimed to be by the plaintiff, particularly indicating it to some of them, as running about 16 feet up on the trunk of a hemlock tree, which had tipped part way over, thus confirming the testimony of the plaintiff, that when he was showing the line this tree was recognized as having fallen across it, Dennis cutting a notch in it, to so mark it.

In this state of the evidence, the controlling thing to my mind is the course of marked trees, which are to be found along the one line, and are absent from the other, without which, as already intimated, it does not meet either the description given of it by the agreement or by the parties on whom the defendants rely. That there were no such trees running from the one picked out by Dennis, is not only testified to by the plaintiff and his witnesses, but by Durkin, the surveyor, whom Philips put in there to run the line, who says that he saw none, notwithstanding that Philips claims to have pointed them out. As still further discrediting the line which was run by this surveyor under the instructions of Philips, it follows no particular direction or course, simply starting at the tree shown him by the same, and ending at the corner of Kemp's field. Not touching at any point the line of the Casebeer lot of which it is supposed to be a part, conforming to nothing, and disregarding the marks and monuments called for on the ground, it requires a good deal of a stretch to accept it as the line which should prevail here. I am satisfied, therefore, that Philips and Dennis are mistaken, and that the line shown them is the one to which the timber has been cut, and not the one to the east of that to which they claim. The defendants have therefore obtained all that they are entitled to under this part of the agreement, and must pay what they owe upon it unless they have a defense in what still remains.

The other point in dispute, however, is easily disposed of. The plaintiff, as already stated, reserved to himself the second growth on an undefined strip extending along the west side of the first or lower tract, which the defendants were to be compensated for by other timber, if there was anything on it which they found that they cared for. It is claimed that compensation was made by certain dead and down timber which the defendants were allowed to cut on the disputed

piece, discussed above, in addition to a few small pines on the lower job. The reservation of this second growth timber, it will be noted, was an absolute one, all that the plaintiff was required to do being to give the defendants an equivalent. The matter was thus expressly left open for adjustment, and it is not as though the contention that it had been disposed of in this way was a makeshift. About the time of the dispute over the line of the second tract, the defendants got a bill for some 13,000 feet of lumber of special sizes, which Philips asked and got leave of the plaintiff to fill from the dead and down timber, which he proceeded to cut; although it did not turn out so well as he expected. In value and amount this was about the equivalent of the second growth timber reserved, helped out by the few small pines which have been spoken of. It has never been paid for, and the dispute with regard to its ownership having now been determined in favor of the plaintiff, it thus forms a fair basis not only for the settlement which is claimed to have been made with regard to it but for an offset or adjustment, here and now, if there has been none. It is denied that there ever was any such settlement or arrangement, and it is pointed out that it is entirely inconsistent with the claim of ownership made by the defendants to the disputed piece. On the other hand, however, it is relied upon as a circumstance, discrediting Philips' testimony on the other branch of the case. But whatever may be said of it, the evidence of a settlement is too direct and positive to be put aside. Not only is it testified to by the plaintiff and his son, but by Crofut and several others who worked on the job. Indirectly, also, if I understand his testimony, it is corroborated by Philips himself, who admits that he had a conversation with the plaintiff the day the mill was taken down in which it was suggested that he, the plaintiff, would allow as much per thousand for the timber reserved as Philips would allow for the 12,000 or 13,000 feet which he had taken from the disputed piece. That he (Philips), as the party in charge of the operation, had authority to make the adjustment claimed, there can be no question, and that he in fact did so I have no doubt. This satisfied the agreement in all respects, and the defendants having obtained out of it all that they bargained for must pay the plaintiff the balance due.

Judgment is therefore directed to be entered in favor of the plaintiff and against the defendants for the sum of $3,085.60; being the amount of the final installment, $2,800, with interest from September 1, 1904, to this date.